FRANCES HAVERSTICK AND MARY ELLEN SCHLATER *v.* BERNARD BANET, EXECUTOR OF THE ESTATE OF CONNIE SCHROEER, HELEN HUFFMAN, ROSE KAHOE, NORA DIDAT, BERNARD BANET, RUBY BANET, NORMA GROW, CLARA COYLE, JUDY DORN AND PHYLLIS FULLER.

[No. 1277S813. Filed December 15, 1977. Rehearing denied March 7, 1978.]

*David B. Hughes, Hughes & Hughes,* of Indianapolis, for appellants.

*Arch N. Bobbitt, Ruckelshaus, Bobbitt & O'Connor,* of Indianapolis, for appellees.

PRENTICE, J.—Plaintiffs (Appellants) are before this Court on petition to transfer, seeking review of an opinion by the Court of Appeals found at 349 N.E.2d 282. It is their position that the ruling precedent followed by the Court and holding that, in a will contest, only the personal representative is entitled to waive the decedent's physician-patient privilege is erroneous. The appeal arose out of an action commenced pursuant to Ind. Code § 29-1-7-17 (1971) to contest the will of Connie Schroeer. Plaintiffs, the heirs of the decedent, are alleging that at the time of the purported execution of her will, Connie Schroeer was of unsound mind and acting under undue influence.

In a trial by jury it was found that the written instrument in question was the will of Connie Schroeer. The Court of Appeals affirmed the trial court which entered judgment upon the verdict of the jury. The issues as presented by the plaintiffs are:

(1) Whether the trial court erred in refusing to permit the plaintiffs, as heirs of the deceased patient, to waive the

physician-patient privilege over the objections of the executor, in an action to contest the will.

(2) Whether the trial court erred in refusing to give certain instructions tendered by the plaintiffs and designated Nos. 4, 7, 10, and 11.

## ISSUE I

The principle issue as set forth by the plaintiffs in their petition is whether this Court should abolish the "Indiana Rule" which provides that only the personal representative can waive the decedent's physician-patient privilege in a will contest. The Indiana law in this area has remained fairly consistent and clear on the subject since the physician-patient privilege was first enacted by statute, the current version of which reads at Ind. Code § 34-1-14-5 (1973) :

"The following persons shall not be competent as witnesses :
*   *   *
"Fourth. Physicians, as to matters communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

While the statute speaks specifically to matters which fall within the scope of the privilege, it is silent as to the issues of waiver and as to any effects resulting from the patient's death. In these areas, the extensions and limitations have come about through the judicial process.

In *Morris* v. *Morris*, (1889) 119 Ind. 341, 21 N.E. 918, this Court dealt with the issue of who could waive the physician-patient privilege after the patient's death. In deciding that the legal representative of the decedent had the right to waive the privilege, the Court stated at p. 344 :

"He (the administrator) was the representative of the testator and was seeking to maintain his will, and had the right, we think, as such representative, to call the physician who attended the testator in his last illness to prove the condition of his mind at the time the will was executed."

Although the court provided that the privilege could be waived by the personal representative of the decedent, no specific mention was made of the heirs' rights to do so.

In *Towles* v. *McCurdy*, (1904) 163 Ind. 12, 71 N.E. 129, this Court was faced with precisely the same issue as that presented by the plaintiffs today. In *Towles*, the children of the decedent, one of whom was the sole legatee and devisee, were involved in an action to contest the will. In defining the rationale behind prohibiting waiver of the privilege by the heirs, while at the same time allowing waiver by the personal representative, the Court stated at p. 15:

> "For obvious reasons, when the controversy is among heirs and devisees, the set of such heirs or devisees who strive to overthrow the will can not, for their own benefit, and against the wishes of the other set, who desire to sustain it, waive the objection to evidence otherwise incompetent, to the detriment of those who seek to establish the will."

The obvious reasons mentioned by the court were never fully explained in *Towles* or in any of the later cases which followed this approach. *Stayner* v. *Nye*, (1949) 227 Ind. 231, 85 N.E.2d 496; *Studabaker* v. *Faylor*, (1912) 52 Ind. App. 171, 98 N.E. 318. Among the states which have decided cases under statutes substantially similar to the one in question, Indiana is the only state to have adopted the above approach. *See* Annot., 97 A.L.R.2d 393 (1964).

Although the purpose behind the adoption of the privilege statute is fairly clear in that it is meant to promote and protect the confidential relationship between a patient and his physician, *Penn. Mutual Life Ins. Co.* v. *Wiler*, (1884) 100 Ind. 92; *Masonic Mutual Benefit Ass'n.* v. *Beck*, (1881) 77 Ind. 203, the policy behind the waiver rule is much more difficult to comprehend. The defendants would suggest that the personal representative is the only person who stands in the place of the deceased and therefore he is the only one who inherits from the deceased the right to waive the privilege. Further, defendants contend that the personal representative,

as executor of the will, has the duty to use such privilege to maintain and uphold the will, such duty resting solely in him.

Courts in other jurisdictions as well as renowned writers in this area, have recognized certain flaws in such reasoning. As to the claim that the personal representative is the only person who stands in the place of the decedent, J. Wigmore, *Law of Evidence* § 2391 (McNaughton rev. 1961) states:

> "The power of an *heir* may also be conceded if we remember that the heir first, is at least equally interested in preserving the ancestor's reputation, and, second, has an equal moral claim to protect the deceased's property rights from unwarranted diminution."

Plaintiffs contend that it would be unjust and inequitable to allow the personal representative to have the sole discretion as to waiver of the privilege, especially where as here, he is also the largest specific legatee under the instrument in question. They suggest that it is unfair and absurd to permit the personal representative to offer the physician's testimony in the event that it should prove beneficial to his position, and to withhold it if it is detrimental. In support of their position, plaintiffs cite several cases from other jurisdictions which have ruled on the same issues presented here.

In *Winters* v. *Winters*, (1887) 102 Iowa 53, 71 N.W. 184, the decedent's brother and only heir filed objections to the will which was offered for probate by the widow as named executrix. Remarking on the Indiana decisions which addressed this same issue, the Iowa court stated at p. 185:

> "The particular vice in the reasoning in these cases, in making the distinction between the heir at law and devisee, is the assumption that the paper in dispute is the will of the deceased. The statutes are for the benefit of the patient while living and of his estate when dead. The very purpose of the contest is to determine whether the deceased in fact made a will, who shall be his representative, and who is entitled to his estate? If he did not have testamentary capacity, then the paper was not his will, and it is not the policy of the law to maintain such an instrument. It is undoubtedly the policy of the law to uphold the testamentary

disposition of property, but not until it is ascertained whether such a disposition has been made. The same presumptions are indulged in favor of the validity of the will as of other instruments. *The paramount purpose in the first instance should be to ascertain whether the instrument presented is in fact the will of the deceased. And no one can be said to represent the deceased in that contest, for he could only be interested in having the truth ascertained, and his estate can only be protected by establishing or defeating the instrument as the truth so ascertained may require.* The testimony of the attending physician is usually reliable, and often controlling, and to place it at the disposal of one party to such a proceeding and withhold it from the other would be manifestly partial and unjust. Such testimony, ordinarily, relates to the capacity of the deceased, and could rarely be perverted to the injury of character. Should it ever be necessary, the court might well, in its discretion, prevent blackening the memory of the dead." (Emphasis added).

The heirs of the decedent brought action to contest the will naming their sister executrix in *In Re Koenig's Estate,* (1956) 247 Minn. 580, 78 N.W.2d 364. In adopting the *Winters* rationale, the Minnesota court commented on the nature of the interests involved in stating at p. 369:

"In such case the position of the heirs who claim the testator lacked mental capacity is no more adverse to the estate than the position of the one who asserts mental capacity. The whole purpose of the inquiry is to determine what is the truth of the matter with respect to the mental competency of the testator."

One of the more recent cases to have ruled on the waiver of the physician-patient privilege in a will contest is *Lembke* v. *Unke,* (N.D. 1969) 171 N.W.2d 837. The North Dakota court chose to reject the Indiana rule and to adopt an approach which would concentrate to a greater extent on the successful development of the truth in stating at p. 847:

"the objective of statutes securing the privilege is in no way thwarted by permitting those who stand in the place of or represent decedents to waive the physician-patient privilege * * * justice will be more apt to result from such

waiver, because it will aid in reaching the truth as to the existence of testamentary capacity on the part of the patient * * *."

In light of the rationale set forth in the above cases, representing the apparent weight of authority, it would appear that the better reasoned approach would be to allow the heirs of the decedent, as well as the personal representative, to waive the decedent's physician-patient privilege in a will contest. In so doing, a full disclosure of all of the relevant facts in issue will more likely be achieved. To the extent that our prior decisions hereinbefore mentioned are in conflict, they are expressly overruled.

## ISSUE II

The second issue, pertaining to the plaintiffs' tendered instructions, was effectively discussed by Judge Lybrook, who wrote for the Court of Appeals at p. 284:

"Finally, appellants contend that the trial court erred in refusing to give certain tendered instructions. Plaintiff's instruction No. 7 concerns the failure of a party to produce available witnesses or evidence and that such failure raises the presumption that the evidence or testimony, if produced, would have been unfavorable. This may be true where the failure is unexplained. However, in the case at bar the situation is fully explained. The defendants called the witness, Attorney Daniel B. Burke, Jr., who prepared decedent's will. The plaintiffs objected raising possible ethical questions. The objection was overruled but in response to the objection the defendants withdrew the witness. The instruction tendered is not applicable in this situation because the defendants did in fact produce the witness and only in response to plaintiffs' objection did they withdraw the witness.

"The plaintiffs next argue that the refusal of the trial court to give their tendered instructions 4, 10 and 11 was error. These instructions basically concern evidence that Connie's will disposed of her estate in a manner contrary to her previously expressed intentions. The purpose of instructing the jury is to inform it of the law applicable to the facts of the case. *Waugaman* v. *Gary Methodist Hospital of Gary* (1972), 151 Ind. App. 279, 279 N.E.2d 240. When

the subject matter of an instruction is adequately covered by the other instructions, it is not error for the court to refuse the tendered instruction. *Richmond Gas Corporation* v. *Reeves* (1973), [158] Ind. App. [338], 302 N.E.2d 795. *Dossett* v. *State* (1974), [159] Ind. App. [446], 307 N.E.2d 286. This is true even if the instruction refused appears more appropriate than the one given. *Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 166 N.E.2d 341; (Transfer denied) 241 Ind. 302, 171 N.E.2d 823; (Rehearing dismissed) 131 Ind. App. 454, 167 N.E.2d 882.

"In the case at bar the trial court adequately instructed the jury. The instructions refused were generally covered ▆ by the other instructions as the jury was told about conflicting evidence and the manner in which such evidence should be weighed. The course is not compelled to specifically instruct the jury as to the testimony of each witness. Rather, the instructions need cover only the law applicable to the facts in the case. *Waugaman, supra.*"

For the foregoing reasons, the petition for transfer is granted; the judgment of the Court of Appeals is vacated and the cause is remanded to the trial court for a new trial.

Givan, C.J. and Hunter and Pivarnik, JJ., concur; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—Under the present law the strict confidentiality of information acquired by a physician while treating or attending a patient is preserved in effect after the patient's death. *The Masonic Mutual Benefit Association* v. *Beck*, (1881) 77 Ind. 203. After the death of the patient the restriction prevents the physician from testifying as to the patient's testamentary capacity so long as anyone who may be said to stand in the place of the testator desires that it be maintained. *Towles* v. *McCurdy*, (1904) 163 Ind. 12, 71 N.E. 129. It is proper and right to repose this authority in such persons because they have the same interest in nondisclosure after his death that decedent had prior to his death. I would maintain the present law which provides that so long as a

person who may reasonably be said to stand in the place of decedent after his death stands up and asks the court to maintain the cloak of privacy, that request should be honored and no other.

There are in addition, I perceive, additional ancillary benefits which flow from maintaining the present law. The present law, by restricting the right to waive the privilege, maximizes and preserves to a high degree the benefits which the General Assembly sought to afford society by enacting the doctor-patient privilege statute, and giving that privilege effect after death of the patient. The present law also acts as a deterrent to those who would procure medical attention for the decedent during his last illness for the purpose of gaining medical information about his condition with the intent of later using that information to either attack or defend the written will. The loss of that deterrent effect is likely to result in intolerable invasions of the decedent's privacy during his last illness.

NOTE.—Reported at 370 N.E.2d 341.